Case number 22-1721, Shanique Perez, a felon, versus Kipp DC Supporting Corporation, doing business as Kipp DC Shaw Gilead, Inc., doing business as Kipp DC Douglas Gilead, et al. Ms. Graziano, for the felon, Mr. Marshall, for the at-the-lease. Good morning. Ms. Graziano, you can proceed when you're ready. Good morning, Your Honors. I'm going to put this a little lower because I am short. Thank you. And it also, when you put it at the right level, it makes a big difference in how much your voice is amplified, so. That's very true, but don't dock my brother's counsel for the time they're going to need to take out of their 10 minutes putting this back up to an appropriate height. But as I said, good morning, Your Honors. May it please the Court, I'm Christina Graziano. I represent plaintiffs in this matter. Jeanette Perez, who joins us this morning. Just to keep it very, very brief on the facts, which I'm sure Your Honors are well-versed in at this point, Ms. Perez enrolled at defendant school Kipp here in DC in 2001. Around the time of 2004, 2005, when she was approximately 14 years old, she was coerced into a sexual relationship with a man named Alan Wade Holman, who was a teacher at the Kipp School. Through the course of this sexual relationship, which ended around 2009, Ms. Perez was groomed, sodomized, raped, manipulated, and ultimately forced to reside with Mr. Holman in his home in Montgomery County. Many years later, through work with the criminal powers that be, Mr. Holman entered into a guilty plea for sexual abuse of a minor in Montgomery County and first-degree child sexual abuse in Washington, DC, also in 2017. In 2018, Ms. Perez filed civil action against the Kipp School under prior counsel, and that case was dismissed in January of 2019 for statute of limitations reasons. And that's really the crux of what brings us here today. On May 3rd, so about six months after that dismissal, DC ratified the Sexual Abuse Statute of Limitations Act of 2018, which extended the limitations period for the recovery of damages available to survivors of sexual abuse just like Ms. Perez. With this knowledge of this extended window, which allowed survivors to the age of 40 or five years after their reasonable knowledge that what they suffered was abuse, Ms. Perez... Sorry, just on the date, you said the statute became effective May 2019? That's when it was ratified. Under DC law, when did it become effective? I'm just looking at an approval date of January 23rd. That sounds correct to me, Your Honor. You think effective in January? I'm sorry? Effective in January, not May? That's correct. It was ratified in May and then came into effect thereafter. Okay. So Ms. Perez contacted myself, the present counsel, and commenced a new lawsuit in April of 2021, well within her period under the revised amendments. You know, I concede this to my brother's counsel, that the facts are the same. She's telling her story of the abuses that she suffered and the actual and constructive knowledge that these defendants had of what their employee was doing to her. There are some differences in the causes of action. Obviously, you know, the district court dismissed this case on statute of limitations grounds, and here we are on the appeal. And I think what this really boils down to, and we'll talk about the race judicata issue, is what is the point of this statute? The point of this statute is to give people like Ms. Perez, who had a time-barred action, the opportunity to appear in court, have their day in court, and confront institutions like HIP and like Charter City, who knew about the abuses and allegedly didn't do enough to The statute is silent on whether it's meant to apply retroactively to people like Ms. Perez, who tried to come forward and were not able to because of the former statute of limitations. The language says that the statute applies to claims that would be barred. That's Ms. Perez. Her claim was barred. She got dismissed without prejudice. So I think that when we look- It's not a would-be claim. It's a was barred. That is correct, Your Honor. And that brings us to, of course, my brother's argument about race judicata. And of course, like I said, it is the same parties. It is the same facts. There are some differences in the causes of action, Your Honors. But really, what we have to look at is where the merits- Race judicata, I don't see how that applies because the case was dismissed without prejudice. And what that means is it has no race judicata effect. I mean, the law is pretty clear in this circuit. But it seems to me you're missing the point. The point was that the district judge went through a constitutional analysis that indicated that there were constitutional issues, particularly in light of the Platt case. And therefore, the statute you're relying upon did not apply. And I don't find you addressing that in your brief at all. What do you say about the constitutional analysis of the district judge? You say nothing. I think, Your Honor, when we analyze the very important responsibility we have not to step on the founder's intent with the Constitution. And we don't want people just reopening old cases and retreading old water, of course. But I think that the difference here is we have to weigh race judicata in, like I said, protecting the sanctity of lower court decisions with the public policy intent and legislative- Let's suppose there is no race judicata effect. Nevertheless, the original case reached a final judgment because you did not appeal. So and it was a judgment on the merits because it was dealing with statute limitations. So given all that, then the question still remains whether that new statute applies to a new suit. And the district judge said, no, it doesn't because of constitutional concerns. You can't answer that by saying there's no race judicata effect. That doesn't answer the question. You're quite right, Your Honor. I think that ultimately what we're looking at, and you're right, was a judgment on the merits. That is what, even though it was a dismissal without prejudice, which I think you can argue that is an important distinction that the court was leaving open that window. That's not, then for purposes of race judicata, that's not a final judgment on the merits, is it? I mean, that's the point of the discussion in our cases. In Surowski, that's the way Semtec treats it. That's the way our Cohen decision treats it. So it's not a final judgment if it's without prejudice, right? That's what we would argue. Of course, there's debate from my brothers on that. But I think ultimately it's a balance, again, of the public policy intent of this statute and what was trying to be done with amending this SOL to let folks like Ms. Perez come forward. It is a delicate consideration, and it is an important fact, unfortunately, that Ms. Perez's prior counsel did not- You could have appealed from the original dismissal, correct? Her prior counsel could have done so. And the only way you can appeal is if it's a final judgment. So the original case became a final judgment when your time for appeal expired, right? Correct. And I think the circumstances of Ms. Perez not being encouraged by prior counsel to appeal is unfortunate. I can only speculate that perhaps it was a conversation of, look, this is the SOL or the statute of limitations on the book. You don't have a viable claim. But if we're balancing what is in the interest of justice here, six months later, six months after that case is dismissed, DC ratifies that new statute. So we're basically sending a message to a survivor like Ms. Perez, if only you waited. And that's really, you know, this statute is there to do exactly the opposite. It's to encourage survivors like Ms. Perez to come forward. Yeah, what about, I keep coming back, this is the third time I've asked you. I haven't gotten an answer. But what is wrong with the district court's constitutional analysis that would mean that the statute doesn't apply to your client? But what is the error that the district court committed? I think it's too rigidly applied, Your Honor. Too rigid. Okay. Plout was pretty clearly stating a rule and very emphatic that we don't do case-by-case balancing tests on separation of powers questions. Again, I think it's really— High fences make good neighbors. I'm sorry? High fences make good neighbors. Absolutely true. But again, I think this is such a unique situation where it's not a litigant who got to the merits, doesn't like the outcome, and is coming back for a second bite at the apple, Your Honors. She didn't get a first bite at the apple because— Same thing happened in Plout. Right, and I think— No, did the same thing happen in Plout? Was Plout without prejudice? That case wasn't dismissed without prejudice, was it? I thought it was with precedent, but I understand what Your Honors are saying. Dismissed on statute of limitations grounds. And then entered as a final judgment, which I understand Judge Randolph's point about if you have the ability to appeal something, it is a final judgment. It's a final judgment for that purpose. But as we know, the law is extensive on the difference between a final judgment appeal and final judgment in terms of final judgment on the merits under race, but it looks like your time has expired, and we'll hear from Mr. Marshall. Did you reserve time for rebuttal? I did. We'll give you some rebuttal time. Thank you, Your Honors. Good morning, Mr. Marshall. Good morning. You can proceed when you're ready. Good morning, Your Honor. May it please the Court, Gregory Marshall for KIPP, D.C., arguing on behalf of Appalese. With me at counsel's table is John McGavin, counsel for Appalee Capital City Charter School. Can I just ask a factual question, which is what is the effective date of the intervening statute? Is it January 23rd, or is it May 3rd? It's May 3rd, Your Honor. The January 24th date is the day it had gotten through the counsel and was approved by the mayor, but then there's— Something else has to happen. There's a 60-day review period from the time that it's submitted to Congress, and then it also had to be put in the federal register. And both Judge Contreras found in Doe—I'm sorry, in Perez, and Judge Boasberg found in the Duke-Ellington case that May 3rd was the effective date of the statute. Thank you. Can you just focus on the terms of the act as enacted? The district court thought—there's this distinction made, I think, in your briefing, and then the district court about would be versus was. But as I read it, it's would be time barred under the D.C. code, but would not be time barred under Section 3. It's sort of if this applied versus if that applied, not that would be had there been a suit, because would is used in parallel in the two clauses, and it just doesn't—there's no indication that they're distinguishing would be had a case been filed from was time barred under prior law. Your Honor, we do think that—we think that the revival provision, it is not a model of But we do think that it revives a claim for recovery of damages that would be time barred under D.C. official code, 12301. Our position in front of Judge Contreras was that it's not that Ms. Perez's suit—it's not that it would be time barred if brought. It was brought and was deemed time barred, and therefore the amendment act did not revive her claim. That was our position. It shouldn't have to get revived, because it said it was without prejudice. She could have filed again. That's not revising or reviving the suit. It wasn't because without prejudice means it had no race judicata effect. And the district judge on the second case around didn't seem to dispute that. So, Your Honor, a couple things. First of all, we do think that this dismissal was effectively—because the statute of limitations had ran, a dismissal without prejudice is effectively a dismissal with prejudice. Isn't the effectively, as discussed, and I think that was Sorowski that you're quoting, that just is saying as a practical matter, because it's talking about whether the pendency of a case, which typically, when the case is ongoing, tolls the statute of limitations, then if the case is dismissed, that tolling effect disappears. So without a rescue, as Ms. Perez had from the D.C. Council, without that kind of change, then effectively case over, never to be revived. But that just doesn't address a situation like this one, where you have a case that's been dismissed without prejudice. And we've said time and again that without prejudice means—and the Supreme Court has said—means without prejudice to the plaintiff returning later to the same court with the same underlying claim. Aren't—the court said that a dismissal for statute of limitations was—is effectively a dismissal with prejudice? Well, not so. You know, I thought about that. The district judge was not absolutely certain that the tolling provisions, as interpreted by the local court of appeals, would apply to this particular case and this particular individual. What's the name of the case? Farris? It wasn't? Yeah, Farris. And the district judge said originally, well, it suggests that it doesn't apply to a discovery of the sort that the plaintiff was arguing. But what that meant to me is that it was still open for the plaintiff, after getting dismissed here, to go to the local court and make exactly the same arguments and allow the local court to give a definitive interpretation of the discovery rule. So it's not accurate, it seems to me, to say that, in effect, the dismissal here for failure to comply with the time limits is conclusive. Because the district judge said, without prejudice, and there's a reason for that. Your Honor, if I may respectfully, I think that Judge Contreras in Doe did hold that there was no discovery rule tolling under Farris. I think that he, in an abundance of caution, he analyzed the statute of limitations issue under both 12-3018 and 12-3011. And under both, Ms. Perez was out of time. But I think that there is... Let me add one more question that's on my mind that follows up on this. Yes, sir. Because you mentioned the language of the implementing act, or whatever it is, that talks about reviving claims. Suppose that language wasn't there. Isn't this case analyzed exactly the same? You don't need the revive language because this claim was not dead. It was still alive because of without prejudice. So if they just filed without a revive in the statute and just filed a second action, why is it that the new statute of limitations wouldn't apply? I don't understand why not. Your Honor, this case was not still open, respectfully. Judge Contreras dismissed the case on January 3rd, 2019. Ms. Perez had moved her motion for leave to amend her complaint had been denied. And he let her... He said that that denial was without prejudice. And he dismissed the case without prejudice. And Ms. Perez then had options, but she didn't exercise any of them. She didn't take... She's exercised one here in coming back to the district court under the amended DC law. And I see in your brief, you might have missed it, but is any authority that helps us figure out how to apply plout to a without prejudice dismissal? In other words, the problem there is when somebody has been given a repose by a preclusive judgment. And if under our precedent, it's not a preclusive judgment. And is there a plout problem with DC's decision to extend the statute of limitations for this kind of conduct? So this was a valid final judgment on the merits. I do think that Sorosky and Smalls, in conjunction with plout, make that clear. Judge Contreras... Sorosky really cuts the other way. I mean, we approvingly noted there that a district court without prejudice dismissal was more generous than a with prejudice dismissal, which would have constituted, as we said, a harsh sanction. It would have imposed the bar of race judicata against any future filing. But that was a without prejudice dismissal. So it didn't impose that bar. And we just have legion of cases that say that. In Cohen, where the district court dismissed with prejudice, we held that that was an abuse of discretion because without prejudice prevents race judicata from attaching. And we thought the race judicata bar was too harsh of a sanction. I think that Cohen was a very... I think that Cohen was a different factual circumstance. They're all different factual circumstances. That's right. But as Judge Contreras himself said in Perez, this was not an open invitation to Ms. Perez. She didn't have... She couldn't decide when to amend in perpetuity, right? She had to act to exercise her rights. Judge Contreras was bent over backwards for this plaintiff, but it didn't mean that she had the opportunity to file an amended complaint 27 months after the rendering of judgment in this case. Does that even apply... I was rereading it. Does it even apply to state statutes? I thought part of the reason that the court analyzed the issue before in that case on separation of powers grounds rather than due process grounds was because the separation of powers ground was narrower. I'm looking at 217 where the court said due process submission, if correct, might dictate a similar result in a challenge to state legislation under the 14th Amendment. So the separation of powers grounds is the narrower ground. We would be extending Plout to say that it would apply to the D.C. law as a separation of powers matter, or should we do it as a due process matter? So I would note in the Perez v. Roe case out of California, the California State, California Appellate Court relied on Plout in holding that revival provision. But that's the state court deciding that it embraces that leap into the state system, right? Sure, Your Honor. There is no question that this was a valid final judgment on the merits. Ms. Perez did not move to amend. She didn't appeal. She didn't seek any post-judgment relief. It was a final judgment. The D.C. Council is not entitled to upend the final judgment of a federal court. And also that final judgment becomes a property right. For my client. It may have been a final judgment, but it didn't have a conclusive effect. It wasn't conclusive. It did, Your Honor, because it's a ruling on the statute of limitations. They could have gone into local court and filed the same action. And the local court would not be bound by the district court judgment here because it was without prejudice to her refiling. Your Honor, D.C. What I'm getting at is, let me just read this to you. This is the from Plout. It says the separation of powers. And this is as succinct as I think you can state it. The separation of powers violation here, if there is any, consists of depriving judicial judgments of the conclusive effect that they had when they were announced. Now, when this was announced, it didn't have a conclusive effect. So if you follow just that one sentence in Plout, it therefore didn't violate any separation of powers statute. Your Honor, there's no question that Judge Contreras wanted this judgment to have conclusive effect. And he said as much in Perez when he said that Ms. Perez, again, she was not entitled to wait for months and months and months and months to pursue her rights. She had to do so. She had to do so with alacrity. And she didn't do anything. She was not entitled to wait for over two years and to file a complaint in the same court based on the same facts, essentially the same clauses of action for a judgment that had already been valid and final. Is there any law governing how long a plaintiff has to refile when you have a case that's dismissed on limitations grounds? So in that sense, by definition, it's too late. But the dismissal is without prejudice. So the district court is saying you may come back to me at some point. Is there any latches or I mean, presumably that doesn't mean you can come back in five years. Correct. It doesn't. But it might mean you can come back in a few months. And how do we assess the timeliness of any return following without prejudice? Well, I think she's got to go to the district. She's either got to get permission under Rule 15 from the other party or go to the court. I think she's got to do that while that case is still viable and ongoing. And after the period to file an appeal, the case was over. It was final. The docket indicates that the case was terminated on February 14th. Do you think without prejudice means you may come back, but you must do so before the time for appeal has run? Correct. Yes. All right. We've given you lots of extra time and we appreciate your responsiveness to our questions. Thank you, Your Honors. We respectfully ask the court to affirm Judge Contreras' decision. Thank you. Oh, apparently the questioning used the time that you sought to reserve, but we'll give you one minute for rebuttal. I'm going to talk while I do this to save everybody time. Your Honors, I think ultimately what this boils down to is what arguments are supported in the law here, in the case law, and in the spirit of fidelity to this new amended SOL. This idea that Ms. Perez was not a perfect plaintiff and didn't timely appeal her prior dismissal or didn't timely move to revive or amend her complaint back in 2018 is immaterial. And I didn't hear any argument with authority from my brother. Just because we repeat something over and over doesn't make it persuasive and doesn't make it authoritative. The intervening action here that cuts off the argument that she waited 27 months is the amendment to the statute that said, hey, survivors, you have this window, seize it, get your moment in court. And that's precisely what Ms. Perez did. So to deny her that opportunity for her moment in court now would really be inequitable and outside the spirit of the amended acts. Thank you, Your Honors.
judges: Pillard, Katsas, Randolph